UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

DIAMANTE ZEBULON FRITTS,

Defendant.
_______________________________/

Case No. 16-20554

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER DENYING MOTION TO SUPPRESS STATEMENTS [23]; GRANTING MOTION TO SUPPRESS EVIDENCE [24]; GRANTING MOTION TO SEVER COUNTS [28]**

Defendant filed a Motion to Suppress Statements [23] on October 13, 2016. The Government responded on November 3, 2016 [29]. Defendant filed a Supplemental Brief re Motion to Suppress Statements on November 14, 2016 [33], which the Government responded to on November 28, 2016 [36]. Defendant filed a Motion to Suppress Evidence [24] on October 31, 2016. The Government responded on November 4, 2016 [30] and Defendant replied on November 16, 2016 [35]. Finally, Defendant filed a Motion to Sever Counts [28] on November 2, 2016. The Government responded on November 4, 2016 [31], and Defendant replied on November 14, 2016 [32].

For the reasons stated below, Defendant's Motion to Suppress Evidence [24] and Motion to Sever Counts [28] are **GRANTED**. Defendant's Motion to Suppress Statements [23] is **DENIED**.

## STATEMENT OF FACTS

On July 24, 2016, a person wearing a Spiderman mask robbed a Family Dollar store in Detroit, Michigan using a firearm and threatening to kill the employees. The employees later identified the robber as Defendant, a former employee at the store who had recently been terminated, based upon the voice, build and mannerisms of the suspect.

On August 2, 2016, Special Agent Zane Nevala (SA Nevala) submitted an affidavit in support of an application for a search warrant of an Asbury Park residence. The warrant was signed by Magistrate Judge Mona Majzoub and executed on the same date. During the search, the following items were recovered: ammunition, rolls of coins, new Nike shoes, receipts for new household appliances, U.S. currency, an extended magazine for a firearm, a digital scale, marijuana, clothing, cocaine and residency documents.

On August 3, 2016, Defendant was interviewed by SA Nevala. This interview was recorded, both by audio and video recordings. During the interview, Defendant denied involvement in the robbery, but made statements concerning his anger at the witnesses who were employed at the Dollar Store, and admissions concerning items recovered in the search.

## ANALYSIS

### 1. MOTION TO SUPPRESS EVIDENCE [24]

#### a. LEGAL STANDARD

The Fourth Amendment requires that reasonable searches and seizures must be supported by warrants issued that establish probable cause and an "[o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To show probable cause, the officer applying for the search warrant must submit an affidavit that contains "facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Crumption*, 824 F. 3d 593, 615 (6th Cir. 2016) (internal citations omitted). The requirement that the warrant show a "fair probability that evidence of a crime will be located on the premises of the proposed search" stands for the proposition that an affidavit must adequately describe a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F. 3d 591, 594 (6th Cir. 2004) (internal quotations omitted).

When reviewing the sufficiency of a warrant application, District Courts are to afford the issuing Magistrate's probable cause determination "great deference." *United States v. Allen*, 211 F. 3d 970, 973 (6th Cir. 2000) (internal citation omitted.). The District Court is limited to the four corners of the affidavit when reviewing the sufficiency of evidence supporting the probable cause determination. *United States v. Berry*, 565 F. 3d 332, 338 (6th Cir. 2009).

### b. PROBABLE CAUSE DID NOT EXIST TO SEARCH THE HOUSE

Defendant seeks to suppress the evidence found in the search of the residence, contending that the affidavit does not sufficiently establish a nexus between the residence searched and the robbery at the Family Dollar store, and that the affidavit also fails to provide a sufficient factual basis that the Defendant lived at the house.

The affidavit is three pages long, consisting of eleven paragraphs. Three paragraphs are dedicated to detailing the relevant experience of SA Nevala, five paragraphs state why the FBI believed that Defendant committed the robbery at the Dollar Store, while the concluding three paragraphs describe why SA Nevala believed that Defendant resided at the residence, and the nexus between the robbery and the house. These three paragraphs state:

> On August 1, 2016, your affiant observed FRITTS walk down the driveway of the subject residence and use the garbage can at the curb and walk back to the residence. A white 2004 Chevrolet Impala, bearing the Michigan license plate DJQ 5890 that FRITTS is known to drive, was parked in the driveway.
>
> Investigation has also revealed that on May 22, 2016, police contact involving a domestic dispute occurred at the house on XXXX Asbury Park, Detroit MI. The dispute involved FRITTS and his girlfriend. At the time of the police contact, FRITTS' girlfriend stated they were living there.
>
> Based on the aforementioned facts, your affiant believes that items identified with (the robbery of the Dollar Store)…are in the possession of FRITTS, whose [sic] has been known and observed to reside at XXXX Asbury Park, Detroit MI…

[24 at Pg ID 88]. In a separate attachment, SA Nevala stated that items to be seized included any and all clothing, shoes, masks that matched the clothing worn by the subject in the surveillance videos from the robbery, and all firearms, ammunition, phone, proof of residence, U.S. currency and vehicle registration information.

Defendant first argues that the affidavit failed to provide a sufficient basis to infer that the Defendant lived at the house. He contends that SA Nevala's information concerning the house is not sufficient for several reasons. First, it did not explain the factual basis upon which the statement that the white 2004 Chevrolet Impala parked at the residence was "known to be driven by Defendant" rested. Second, the fact that Defendant was seen walking outside to use the garbage can and back into the residence was not sufficient to show that he resided there, since a guest could just as well have engaged in that activity. Third, the affidavit did not provide any substantial reason to credit the statement of the unidentified woman (identified not by name, and without any factual explanation of its basis in the affidavit, as his girlfriend), and further did not contain information upon which to conclude that she was a reliable source. Fourth, SA Nevela should not have relied upon hearsay statements contained in a DPD report and given by an unknown and untested person. Finally, he argues that SA Nevala did not indicate that he had been in touch with this woman to inquire whether Defendant continued to reside in the Asbury residence after the domestic abuse incident.

Defendant further claims that the affidavit did not establish a nexus between the robbery and the residence. Defendant argues that the affidavit attempts to establish a nexus between the robbery and the residence by asserting that there was cause to believe that he committed the robbery at the Dollar Store and resided at the Asbury residence, thus attempting to establish probable cause upon two separate inferences.

The Government argued that the nexus requirement was met because it is not too big a leap of logic for the Court to infer from the affidavit that a person would store the proceeds of a robbery in their house. In purportedly establishing that the Defendant resided in the house, the Government relies upon the facts that the affidavit alleged Defendant was seen freely entering and exiting the residence on one occasion, and on a previous recent police contact at the house, in which an unnamed woman said that she and Defendant lived at the residence together, to argue that the affidavit sufficiently established that Defendant resided in the house, and therefore the Magistrate did have probable cause to determine that proceeds from the robbery would likely be found in the Asbury residence.

To meet the nexus requirement, "[t]he connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). The affidavit must provide sufficient facts for why the officer believes the evidence is expected to be found in the place to be searched rather than some other location. *Id*.

The affidavit provided no reason to believe that the items being sought would be found in the house. First, the affidavit does not contain evidence to establish probable cause on the nexus issue. The Sixth Circuit in *United States v. Brown* stated that "[w]e have never held, however, that a suspect's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home" and that to establish a nexus between evidence in a drug case and a residence, a sufficient affidavit required "some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence." 828 F.3d at 383.

While that case dealt with drug trafficking, it is instructive in this case where the affidavit does not contain any facts to link the single alleged incident of robbery to the alleged residence of the Defendant. There are no observations of any of the items to be found at the residence or any indication in the affidavit that Defendant would have items from a robbery in the Asbury residence. Rather, the only observations of the Defendant at the residence contained in the affidavit do not establish any link whatsoever between the robbery and the evidence and the residence. There is nothing presented in the affidavit to connect the crime alleged and the location to be searched to suggest that evidence would be likely to be found in the house, rather than in another location like Defendant's car.

Further, the nexus argument presented by the Government is not persuasive since the affidavit does not even provide evidence to support the conclusion that Defendant resided at the Asbury house. The only evidence presented to link

Defendant and the house is that Defendant was observed taking trash out and returning to the house, the presence of a car that Defendant is "known to drive," but with no factual support provided, parked in the driveway, and a domestic dispute report made by a woman, who identified herself as Defendant's girlfriend, from May 22, 2016 where she indicated that Defendant lived at the Asbury house with her. These are all insufficient to support an inference that Defendant resided at the house. First, the mere fact that Defendant was seen taking out trash and entering the house is not any more indicative of Defendant being a visitor than it is of Defendant residing at the house. Second, while the affidavit states that a car that Defendant was "known to drive" was seen parked in the driveway, the affidavit does not establish *how* the officer knew that Defendant drove that car. While the Government argued at the hearing that the officer gained that knowledge from extensive interviews of witnesses and former co-workers of Defendant at the Dollar Store, there is no indication of this in the four corners of the affidavit, and rather it is presented as an *ad hoc*, unsupported conclusion.

Finally, Government relies heavily on the domestic dispute report, which occurred two months prior to the search, to establish that Defendant resided at the Asbury residence. However, the usefulness of that report is questionable because of the time difference between the report and the search. In an intimate, interpersonal crime of domestic dispute, there is a likelihood that the living arrangements would have changed after the dispute. This is particularly important in a case where, like

here, there were multiple addresses where Defendant had previously resided. These facts combine to create a situation where the report is in danger of being stale. *See e.g. United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (stating that, when considering if a piece of evidence is stale or not, courts consider, *inter alia*, the character of the crime and whether the criminal is entrenched at the location or nomadic). The officer made no attempt to further investigate whether the information in the report was still valid based on the information presented in the affidavit. Instead, he relied on indirect evidence to infer that Defendant resided at the Asbury residence, rather than any other locations that he was previously known to be associated with.

In establishing probable cause to search the Asbury residence, the warrant relies on two inferences that are unsupported by evidence in the affidavit: (1) that evidence of the robbery would be likely to be found in the residence; and (2) that Defendant resided in the Asbury residence. While the Government is correct that the Sixth Circuit has found that a nexus may be inferred, the Sixth Circuit has also held that an inference may be acceptable when the affidavit presented is highly detailed, and a single inference is required by the officer. *United States v. Laughton*, 409 F.3d 744, 750 (6th Cir. 2005). However, officers cannot rely on a "number of inferences" or "inferences drawn upon inferences" to achieve reasonable reliance, suppressing the evidence and that is exactly the situation presented here. *Id*.

The affidavit contains only three brief paragraphs of indirect evidence to establish probable cause based on two inferences. There is no direct evidence presented in the affidavit to link either Defendant to the house as a resident or to link evidence of the crime to the residence, therefore there is no probable cause for a warrant permitting the FBI to search of the Asbury house to uncover evidence of the robbery at the Dollar Store.

**c. GOOD FAITH EXCEPTION**

A finding of no probable cause does "not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir.2005). Under the good faith exception, the inquiry is limited "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922–23, n. 23, 104 S.Ct. 3405. (1984).

This good faith reliance cannot be relied on by an officer when: (1) the warrant's affidavit contains "knowing or reckless falsity;" (2) the magistrate "wholly abandoned" their judicial role; (3) "the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or (4) "where the officer's reliance on the warrant was neither in good faith nor objectively reasonable" *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005), citing *Leon*, 468 U.S. at 923 (internal quotations omitted).

The third limitation prevents the submission of evidence if an affidavit is bare bones, i.e. an affidavit "that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) (internal citations omitted). For Leon to apply in this case, the affidavit must contain:

> a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause.

*United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004).

Defendant argues that the good faith exception does not apply because the warrant was bare bones. The Court agrees with the Defendant on this characterization. The bulk of the affidavit dealt with establishing probable cause that Defendant committed a crime. However, this was not a warrant for arrest, and there was only three brief paragraphs of indirect evidence, possibly stale evidence, and unsupported conclusory statements to support a finding of probable cause, making this affidavit bare bones and not subject to the good faith exception.

Therefore, Defendant's Motion to Suppress Evidence [24] is granted, and the Court orders that the evidence obtained in the search of the Asbury residence on August 2, 2016 be suppressed. Additionally, Defendant's request for a *Franks* hearing is denied given the suppression of the evidence.

### 2. MOTION TO SUPPRESS STATEMENTS [23]

Defendant seeks to suppress his statements, based upon the argument that he invoked his right to remain silent in the interview, which the interviewer ignored, continuing the interrogation, ultimately obtaining his incriminating statements. The Government replies that Defendant's statement was not an unambiguous invocation of his right to remain silent, so the statements should not be suppressed. Defendant also argues that he was not properly Mirandized, accordingly did not make a knowing waiver of his *Miranda* rights, and therefore his statement must be suppressed.

#### a. LEGAL STANDARD

Under *Miranda v. Arizona*, a person held in custody can be interrogated only after they have been informed of their rights, and then knowingly waives them. 384 U.S. 436, 444 (1966). "Statements made in response to custodial police interrogation must be suppressed unless the suspect first waived his Miranda rights 'voluntarily, knowingly and intelligently.'" *United States v. Lawrence*, 735 F.3d 385, 436 (6th Cir. 2013). When determining whether the Defendant waived their Miranda rights, the Court looks to the totality of the circumstances. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

*Miranda v. Arizona* also counsels that [o]nce warning have been given,…[i]f the individual indicates in any manner, at any time…during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473-74. This invocation must be unambiguous and unequivocal to stop the questioning by law

enforcement officers. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). Once such an invocation is invoked, the police must honor it and immediately cease questioning. *Michigan v. Mosley*, 423 U.S. 96, 103 (1975).

**b. ANALYSIS**

Defendant's interview was recorded by both video and audio means. In the beginning of the interview, Defendant was read his rights from a *Miranda* card and indicated that he understood those rights, but refused to sign the Miranda card. The agent then commenced his interrogation of the Defendant. Fifteen minutes into the questioning, after being informed of the advantages of cooperation, Defendants stated:

> I had nothing to do with this situation…So therefore, I have nothing else to say at all, period. Now, I'll go to court and do whatever ya'll say. They can try to do whatever, take my life whatever, do what they have to do because I don't have nothing to do with this situation and God got me, so God bless ya'll and ya'll can do whatever you have to do because I have nothing else to say.

Following this statement, the agent continued the interrogation, saying "And how 'bout if we talk about the video and the evidence that we have that clearly shows you at the store." The Defendant continued to answer the agent's question, "if you all had me on that camera robbing them, I would know…If I was on that camera, you all got me and that's it..." The interview continued questioning for fifteen more minutes and Defendant continued to answer the agent's questions.

As to the initial *Miranda* argument, at the hearing Defense counsel argued that because Defendant refused to sign the *Miranda* waiver, he did not waive his *Miranda*

rights, and the statements should be suppressed. Defense counsel admitted that there were no cases that made the signature of a suspect part of a valid *Miranda* waiver. Therefore, the Court ruled from the bench, for the reasons stated on the record, that this argument of Defendant was rejected.

Defendant also argues that his statement to remain silent was unambiguous, and that any statements made after his initial invocation of the right were merely reiterating his invocation of the right. The Government contends that the statement quoted above is ambiguous, because, after the first indication that "I have nothing else to say at all, period," the Defendant continued to talk and "try to explain the circumstances." In the context of the video, they argue that the statement is ambiguous, because it can easily be interpreted as a defiant statement for the agent to "bring it."

The Court agrees with the Government. The Defendant continued to speak and offer explanation after he said he did not want to speak anymore. He did not clearly and unambiguously invoke his right to remain silent. Instead, he indicated that he did not want to speak anymore because he had told the agent everything that he knew, rather than an unequivocal statement that indicated that he wished to invoke his right to remain silent for the interview. This defiant statement was clearly ambiguous because, immediately thereafter, Defendant continued to speak unprompted and profess his innocence. Then, when the agent continued to question him, the Defendant continued to answer without expressing unambiguously his invocation of his right to

remain silent. There is no indication on the video that Defendant unambiguously invoked his right to remain silent. Therefore, the Court denies the Motion to Suppress Statements [23].

**3. MOTION TO SEVER COUNTS [28]**

Defendant also filed a Motion to Sever Counts, arguing that the counts 3 and 4, which are the drug counts, should be severed from counts 1 and 2, the robbery counts, per Fed. R. Crim. P. Rule 8(a) or 14, because they represent two categories of entirely unrelated crimes. The Government contends that the charges are logically connected, because firearms are known to be tools often employed in the drug trafficking trade. It further argues that, if the counts are severed, then the same evidence will be used at each trial, asserting that it would be entitled to offer both evidence of the narcotics trafficking and the items recovered from the Asbury residence at the robbery trial and thus judicial economy would be served by denying this motion.

Per Rule 8(a), offenses can be charged together if they "are of the same or similar character," or if they "are based on the same act or transaction." In the Sixth Circuit, when determining if counts should be severed, Courts look to the face of the indictment. *United States v. Chavis*, 296 F.3d 450, 458 (6th Cir. 2002). In this case, the indictment does not even refer to the use or possession of a firearm in relation to the drug charges.

The indictment charges two distinct crimes, the robbery of the store on July 24, 2016, described in counts one and two, and the finding of drugs at the Asbury

residence, in counts three and four. The only connection between the two counts is that Defendant is alleged to have committed both. The crimes are not related at all on the face of the indictment, they are not similar in nature, not part of the same transaction, and not part of the same scheme or plan. There is no indication on the face of the indictment that Defendant is alleged to have used a firearm in the drug counts, or that the drug counts are at all connected to the armed robbery counts, other than that the same person is alleged to have committed them. Therefore, on the face of the indictment, severance is appropriate.

Additionally, the Government's "tools of the trade" argument is not persuasive. This argument would permit joinder only "when the firearms charges and the drug charges are sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan." *Chavis*, 296 F.3d at 459. There were nine days between the armed robbery and the discovery of the drug evidence, at different locations, and the indictment does not state any link between the two different crimes alleged. The *Chavis* court relied on the face of the indictment to analyze whether the counts should be severed, stating that on the face of the indictment, there was no connection between these two crimes temporally or logically. The situation is similar here, since the indictment plainly does not link the robbery and drug counts beyond the fact that the same person is alleged to have committed both.

In terms of economy, the Government cites two cases for the proposition that severance would be inefficient because the evidence would overlap in both trials, and it would use evidence of the drug charges in the robbery trial. However, those decisions are easily distinguishable, as in each, the Government introduced narcotics trafficking evidence to refute those Defendants' denials that they knowingly possessed a firearm in their trials for firearm possession. *See United States v. Carrasco,*257 F.3d 1045, 1048 (9th Cir.2001) ("[E]vidence of narcotics trafficking may be properly admitted to show knowing possession of a weapon.") (quoting *United States v. Butcher,* 926 F.2d 811, 816 (9th Cir.1991)). In this case, the firearm charge is related to the robbery, the main issue contested is whether Defendant committed the robbery; possession of a gun during the robbery is not in question given the video surveillance of the event. Therefore, the argument that the drug evidence would be used in the armed robbery case would support judicial economy is dubious at best since the case law is easily distinguishable from the case before the Court.

Also, any argument that severing the counts serves judicial economy is unpersuasive in general. While it is correct that if the Counts are severed, the Court would expend resources for two trials, the legal teams would charge for two appearances, and the Defendant would be brought into the Court twice, these are not arguments that support joinder of the counts for judicial economy. In reality, the resources expended on two trials would likely be closely equivalent to those spent on

one trial with all four counts, because the one trial would encompass all the extra time and resources of all four counts that the two separate trials would entail.

Therefore, since the face of the indictment does not connect the drug charges and the robbery charges at all, and the possible joinder of the Counts would undoubtedly prejudice Defendant as the Government conceded at the motion hearing, the Motion to Sever Counts [28] is granted.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress Statements [23] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence [24] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Sever Counts [28] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: December 9, 2016